United States District Court
Southern District of Texas
**ENTERED**
December 21, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § § | |
| VS. § | CRIMINAL ACTION NO. 5:22-CR-1296 |
| § § § | |
| CHRISTOPHER MALIK ROBINSON § | |

# ORDER

Defendant has moved to suppress evidence obtained from a roving patrol stop (Dkt. No. 28). After conducting a hearing, the Magistrate Judge issued a report and recommendation (the "Report"), which recommended that the motion be denied (Dkt No. 35). Defendant filed objections (Dkt. Nos. 37), and the Court has reviewed the Report's objected-to portions *de novo*. Having considered the entire record, arguments, and applicable authorities, the Report (Dkt. No. 35) is hereby **ADOPTED IN PART** and **MODIFIED IN PART**. Defendant's motion to suppress (Dkt. No. 28) is **DENIED**.

## I. BACKGROUND

On September 11, 2022, Border Patrol Agent Christopher Padilla was on patrol near the Laredo North Border Patrol Checkpoint (Tr. 10:24–11:8). While monitoring the I-35 west access road near mile marker 31, Agent Padilla received a report that a vehicle traveling toward him "seemed suspicious" (Tr. 14:8–11; 16:12–20).[1] He then

---

[1] The report came from Department of Defense officials observing the west access road near mile marker 27—approximately 4 miles from Agent Padilla (Tr. 14:8–18; 16:12–20).

saw a clean Suburban driving north on the west access road (Tr. 17:8–10). When Agent Padilla began following the Suburban, it slowed to 35 miles per hour in a 55 mile-per-hour zone (Tr. 17:21–23; 18:5–11). As he followed, Agent Padilla ran a registration check and learned that the Suburban was registered to a rental company in Oklahoma (Tr. 18:17–19). The Suburban then turned right to go through an underpass, turned left onto the east access road, and merged onto the northbound side of I-35 (Tr. 19:8–23). After a few seconds' delay, Agent Padilla followed the Suburban onto I-35 and observed it weave in and out of traffic at high speeds (Tr. 19:20–21:5). Agent Padilla drove approximately 105 miles per hour for two miles before catching up to the Suburban (Tr. 20:16–19). Agent Padilla conducted a roving patrol stop near mile marker 35 and discovered seven undocumented aliens in Defendant's vehicle (Tr. 41:18–21; Dkt. No. 1).

## II. LEGAL STANDARD

### A. Standard of Review

When a party objects to a magistrate judge's report, the district court reviews those portions of the report to which a party has specifically objected *de novo*. *See* 28 U.S.C. § 636(b)(l)(C). The district court reviews uncontested portions of a magistrate judge's report for clear error. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

### B. Roving Patrol Stops

Before conducting a roving patrol stop, a Border Patrol agent must be "aware of specific, articulable facts, together with rational inferences from those facts,"

supporting a reasonable suspicion that the vehicle is involved in criminal activity. *See United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013) (quoting *United States v. Cardona*, 955 F.2d 976, 980 (5th Cir. 1992)). To determine whether an agent had reasonable suspicion, courts consider the eight *Brignoni-Ponce* factors: (1) the characteristics of the area, (2) the vehicle's proximity to the border, (3) usual traffic patterns, (4) the arresting agent's experience, (5) recent illegal activity in the area, (6) the driver's behavior, (7) aspects of the vehicle, and (8) the number and behavior of the passengers. *See United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975)). Reasonable suspicion may exist even if some *Brignoni-Ponce* factors do not weigh in its favor. *United States v. Zapata-Ibarra*, 212 F.3d 877, 884 (5th Cir. 2000). Additionally, a border patrol agent need not "eliminate all reasonable possibility of innocent travel before conducting an investigatory stop." *Id.* Reasonable suspicion is assessed based on "the totality of the circumstances known to the agents at the time of the stop and their experience in evaluating such circumstances." *United States v. Nelson*, 990 F.3d 947, 953 (5th Cir. 2019), *cert. denied*, 142 S. Ct. 490 (2021).

### III. DISCUSSION

Defendant generally objects that the Report "fails to state why evidence contrary to its findings is not credible or relevant" (Dkt. No. 37 at 2). The Court has reviewed Defendant's evidence, which consists only of Agent Padilla's testimony on cross examination and three inconsequential exhibits. The points Defendant elicited

3

on cross were largely argumentative and speculative. They neither affected Agent Padilla's credibility, nor did they affect the totality of the circumstances analysis.

Defendant has further objected to the Report's conclusions on six of eight *Brignoni-Ponce* factors. Below, the Court addresses each objection and makes its own factual findings. Ultimately, the Court agrees with the Report's overall recommendation: Agent Padilla had reasonable suspicion to stop Defendant's vehicle.

### A. Proximity to the Border

The Report concluded this factor weighed heavily in favor of reasonable suspicion (Dkt. No. 35 at 12). Defendant objected, arguing no evidence suggested Defendant's vehicle originated at the border (Dkt. No 37 at 3). The objection is **OVERRULED**. The Court adopts the Report's finding that proximity weighs in favor of the Government. However, the Court modifies the Report's finding that this factor weighs heavily.

The Fifth Circuit has held "[a]nything less than 50 miles [from the border] . . . implicates the proximity factor." *Garza*, 727 F.3d at 441 (finding proximity favored reasonable suspicion where agent encountered defendant 5 miles from the border); *see Nelson*, 990 F.3d at 953–54 (same, where agents encountered defendant at the Laredo North Checkpoint, 29 miles from the border); *United States v. Reyes-Medellin*, 756 F. App'x 461, 462 (5th Cir. 2019) (same, where agent encountered defendant "well within 50 miles of the border"). However, if law enforcement encounters a suspect on a road coming from a densely populated area, such as Laredo, the Fifth Circuit has "hesitate[d] to conclude" that proximity "weigh[s] *heavily* in favor of reasonable

4

suspicion." *United States v. Freeman*, 914 F.3d 337, 343 (5th Cir. 2019) (emphasis in original).

Here, Agent Padilla first encountered Defendant approximately 31 miles from the border (Tr. 17:8–10). Defendant argues proximity nonetheless weighs against reasonable suspicion because "there is no evidence that [D]efendant's vehicle originated at the United States border with Mexico" (Dkt. No. 37 at 3). He emphasizes that Agent Padilla received no report stating the Suburban came from Mexico (*id.*). But Defendant cites no legal authority showing such evidence is required for this factor. Further, the Court has located no authority stating that the Government *must* present evidence that a vehicle originated at the border to prevail on this factor.

Because Agent Padilla encountered Defendant well within 50 miles of the border, the Court adopts the Report's conclusion that proximity weighs in favor of reasonable suspicion. However, because northbound travelers on I-35 often come from the densely populated city of Laredo, the Court will not weigh this factor heavily. *See Freeman*, 914 F.3d at 343.

### B. Characteristics of the Area

The Report concluded this factor weighed in favor of reasonable suspicion. Defendant objected, arguing "it is not reasonable to infer that only persons engaged in criminal activity would want to take the west access road," as travelers use the road to avoid checkpoint traffic (Dkt. No. 37 at 4). This objection is **OVERRULED**. The Report's recommendation on this factor is adopted in whole. The Court agrees

5

that this factor weighs in favor of reasonable suspicion and makes additional findings.

First, and most significantly, the west access road directly bypasses the Border Patrol checkpoint. Indeed, Department of Defense personnel stationed at exit 27 of I-35 "intentionally look for vehicles" exiting the highway to take the west access road around the checkpoint (Tr. 14:14–18). Bypassing a checkpoint strongly contributes to reasonable suspicion. *See United States v. Zamora*, 822 F. App'x 250, 253 (5th Cir. 2020) (finding defendant's travel on road frequently used to avoid checkpoint contributed to agent's reasonable suspicion); *Zapata-Ibarra*, 212 F.3d at 881–82 (same). Certainly, as a *theoretical* matter, a driver could bypass the checkpoint and be innocent of any criminal wrongdoing. But Defendant's argument is just that—theoretical. His proposed theory does not undermine the reasonableness of Agent Padilla's suspicion. *See Zapata-Ibarra*, 212 F.3d at 884 (explaining that law enforcement need not "eliminate all reasonable possibility of innocent travel" to form a reasonable suspicion).

Second, the Court is unpersuaded that heavy checkpoint traffic neutralizes any reasonable suspicion arising from bypassing the checkpoint. Defendant argues that a map application could reroute a traveler around "excessive traffic" at the checkpoint (Dkt. No. 37 at 4). However, Agent Padilla credibly testified that traffic was light on the day of the stop (Tr. 42:18–43:3). Defendant points to no evidence showing an application would suggest the west access road as an alternative route despite light traffic. Moreover, Defendant's purported shortcut requires exiting I-35 at mile

6

marker 27, turning left at an underpass, turning right onto the west access road, traveling for approximately five miles, turning right at around mile marker 32, and, finally, turning left to again merge onto I-35. This route is circuitous and unlikely to save time unless the checkpoint is severely backed up. The characteristics of the area strongly favor reasonable suspicion.

### C. Driver's Behavior

The Report found this factor weighed in favor of reasonable suspicion. Although Defendant objected on several grounds, his objections are **OVERRULED**. The Court adopts the Report's recommendation on this factor in whole. It also makes the following findings.

Defendant first argues that holding the steering wheel with two hands and focusing on the road is normal behavior (Dkt. No. 37 at 5). The Court agrees. However, Agent Padilla also testified Defendant held the steering wheel with "locked out arms," which he reasonably found to be "abnormal" (Tr. 17:18–19). Moreover, Defendant's subsequent behavior further supports reasonable suspicion.

When Agent Padilla began following Defendant on the west access road, Defendant slowed to approximately 35 miles per hour in a 55-mile-per-hour zone (Tr. 18:5–11). Driving 20 miles below the speed limit supports Agent Padilla's reasonable suspicion. *See United States v. Villalobos*, 161 F.3d 285, 291 (5th Cir. 1998) ("[N]oticeable deceleration in the presence of a patrol car can contribute to reasonable suspicion . . . ."); *United States v. Enrique Urquizo*, 801 F. App'x 318, 319 (5th Cir. 2020) ("[T]he driver's unusually low speeds—approximately 15 miles below the speed

7

limit—contributed to reasonable suspicion . . . ."). Defendant tries to discredit this conclusion, arguing "there is no way of verifying if this was his actual speed" (Dkt. No. 37 at 5). The Court nonetheless credits Agent Padilla's testimony. Although Agent Padilla did not use a radar gun to confirm Defendant's speed, Agent Padilla closely followed Defendant at the time and could reliably estimate his low rate of speed (Tr. 46:4–8).

Finally, Agent Padilla testified that Defendant merged onto I-35 at a high velocity, and that Agent Padilla had to drive at up to 105 miles per hour for two miles to reach Defendant (Tr. 19:16–20:19). Agent Padilla also testified that Defendant passed vehicles in both the right and left lanes (Tr. 43:23–25). This kind of driving is consistent with evasive maneuvering. Thus, even without radar gun evidence,[2] the Court finds Agent Padilla's testimony credible. Defendant's unusual driving behavior weighs in favor of reasonable suspicion.

**D. Usual Traffic Patterns**

The Report concluded this factor weighed in favor of reasonable suspicion. The Report found "no evidence that traffic was heavy enough to warrant the alternate route on September 11, 2022" (Dkt. No. 35 at 13). Defendant objected, arguing that "[t]here is no requirement of traffic heavy enough to use the west access road" (Dkt. No 37 at 4). Defendant's objection is **OVERRULED**, and the Report's recommendation on this factor is adopted in whole. The Court also makes the following findings:

---

[2] It is well-known that Border Patrol agents do not use radar guns. Border Patrol agents are not Department of Public Safety officers, and they are not tasked with enforcing traffic laws.

8

Agent Padilla credibly testified that the west access road's usual traffic primarily consists of dusty or muddy utility vehicles coming from the nearby oil rig or ranches (Tr. 13:1–13). A clean Suburban was inconsistent with this usual traffic pattern (Tr. 17:8–10). Additionally, because Agent Padilla credibly testified traffic was light on that day, it was improbable that a map application would redirect a traveler to the access road. Agent Padilla therefore had no reason to believe the usual traffic pattern should differ. *See Reyes-Medellin*, 756 F. App'x at 462 ("The agent's familiarity with local traffic patterns, which primarily consisted of dirty ranch trucks . . . further contribute to reasonable suspicion.").

Defendant also argued that, because exit 27 is the last exit before the checkpoint, travelers may elect to take the west access road even when they are unsure of the severity of checkpoint traffic (Dkt. No. 37 at 4). This argument is purely conjectural. Moreover, Agent Padilla testified that the west access road consists primarily of ranch and oil rig traffic (Tr. 13:1–13). Therefore, even if some travelers elect to take the west access road, Agent Padilla's testimony suggests such behavior is unusual. The usual traffic patterns weigh in favor of reasonable suspicion.

### E. Aspects of the Vehicle

The Report found this factor weighed in favor of reasonable suspicion. Agent Padilla testified that he observed a clean, newer model Suburban (Tr. 17:8). The Suburban's back windows were darkly tinted, and it was registered to a rental company in Oklahoma (Tr. 17:8–15; 18:17–25). Agent Padilla testified that Defendant's "clean, non-white Suburban without business markings" was abnormal,

9

as most vehicles on the west access road are dirty, white utility vehicles with company logos (Dkt. No. 35 at 15; Tr. 12:12–13:13). The Report credited Agent Padilla's testimony. Defendant objected, arguing "these are not the only vehicles on the west access road" (Dkt. No. 37 at 6). The objection is **OVERRULED**. Like the Magistrate Judge, the Court finds the unusualness of Defendant's clean Suburban contributes to the reasonableness of Agent Padilla's suspicion. *See Reyes-Medellin*, 756 F. App'x at 462 (finding clean sedan was unusual and contributed to reasonable suspicion); *United States v. Nichols*, 142 F.3d 857, 870 (5th Cir. 1998) (finding the vehicle's appearance contributed to reasonable suspicion where the agent "found it odd that the truck seemed . . . extremely clean and it didn't have any logos or markings on it at all"). The Report's recommendation on this factor is adopted in whole. The aspects of the Suburban weigh in favor of reasonable suspicion.

### F. Recent Illegal Activity

The Report concluded this factor weighed in favor of reasonable suspicion. Defendant objected, arguing the presence of a Border Patrol checkpoint cannot support an inference of recent illegal activity and the Government presented no evidence of recent illegal activity in the area (Dkt. No. 37 at 6). The Court agrees, and the objection is **SUSTAINED**.

### G. Arresting Agent's Previous Experience and the Appearance of Passengers

The Report concluded these two factors weighed against reasonable suspicion, and no party objected to these portions of the Report. Finding no clear error with the

10

Report's analysis of these factors, the Report's recommendation regarding the Agent's previous experience and the appearance of passengers is adopted in whole.

## IV. CONCLUSION

Having reviewed the *Brignoni-Ponce* factors and considered the totality of the circumstances, the Court concludes Agent Padilla had reasonable suspicion to conduct a roving stop of Defendant. Defendant was encountered 31 miles from the border on a road circumventing the checkpoint. His vehicle was unusually clean for the area. He slowed significantly when Agent Padilla followed him, and he later began speeding and passing traffic on the left and right. While any one of these facts alone may not have supported reasonable suspicion, "all of the specific facts considered together supported the stop." *Gardea-Ortiz*, 33 F. App'x at 704. The Defendant's motion to suppress (Dkt. No. 28) is therefore **DENIED**.

It is so **ORDERED**.

**SIGNED** December 21, 2022.

Marina Garcia Marmolejo
United States District Judge